UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CALVIN EUNICE MARSHALL,

                    Petitioner,                    Case No. 2:25-cv-118

v.                                                 Honorable Hala Y. Jarbou

DOUGLAS TASSON,

                    Respondent.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly

after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of

the petition to determine whether "it plainly appears from the face of the petition and any exhibits

annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules

Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed.

Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has

the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes

those petitions which raise legally frivolous claims, as well as those containing factual allegations

that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After

undertaking the review required by Rule 4, the Court will grant Petitioner's motion for immediate

consideration (ECF No. 3) to the extent that this opinion and accompanying order and judgment

resolve Petitioner's § 2254 petition. However, Petitioner's § 2254 petition must be dismissed

because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual Allegations

Petitioner Calvin Eunice Marshall is incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. On August 8, 2011, the Wayne County Circuit Court sentenced Petitioner to six concurrent terms of 14 years, 3 months to 25 years of incarceration after Petitioner pleaded *nolo contendere* to six counts of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb. state.mi.us/otis2/otis2profile.aspx?mdocNumber=732012 (last visited June 23, 2025). On August 29, 2012, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal. *See* Register of Actions, *People v. Marshall*, No. 311536 (Mich. Ct. App), https://www. courts.michigan.gov/c/courts/coa/case/311536 (last visited June 23, 2025). The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 29, 2013. *See People v. Marshall*, 829 N.W.2d 235 (Mich. 2013).

Petitioner then returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.502. *See Marshall v. Napel*, No. 16-2723, 2017 WL 6398016, at *1 (6th Cir. July 14, 2017) (explaining factual background). The trial court denied that motion on July 31, 2014. *See* Register of Actions, *People v. Marshall*, No. 325833 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/325833 (last visited June 23, 2025). The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal on April 9, 2015. *See id.* The Michigan Supreme Court denied Petitioner's application for leave to appeal on March 29, 2016. *See People v. Marshall*, 876 N.W.2d 537 (Mich. 2016).

Petitioner then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254, which was denied by the United States District Court for the Eastern District of Michigan. *See Marshall*

*v. Winn*, No. 2:16-cv-12016, 2016 WL 6441286, at *1 (E.D. Mich. Oct. 31, 2016). On July 14, 2017, the United States Court of Appeals for the Sixth Circuit denied a certificate of appealability and affirmed the denial of Petitioner's § 2254 petition. *See Marshall*, 2017 WL 6398016, at *2.

At some point prior to November 6, 2024, Petitioner appeared for a parole hearing before Brian Shipman and Colin J. Riehl, members of the Michigan Parole Board (MPB) (§ 2254 Pet., ECF No. 1, PageID.7.) On November 19, 2024, those individuals voted to grant Petitioner parole and issued a Parole Board Notice of Decision indicating that Petitioner's projected parole date was March 25, 2025. (*Id.*, PageID.6.)

Thereafter, on March 18, 2025, MPB members Aaron Dungy and Criss Blankenberg voted to suspend Petitioner's parole date and issued a Parole Board Notice of Action/Decision regarding that fact. (*Id.*, PageID.8.) The notice indicated that Petitioner would be eligible for reconsideration for parole on March 25, 2026. (*Id.*)

Petitioner filed the instant § 2254 petition on May 20, 2025, by filing it with the United States District Court for the Eastern District of Michigan. (ECF No. 1.) Petitioner also filed a motion for immediate consideration. (ECF No. 3.) In an order (ECF No. 5) entered on May 28, 2025, the Eastern District transferred the matter to this Court for further consideration.

In the instant petition, Petitioner challenges the MPB's decision to suspend his parole date and not release him on parole on March 25, 2025. Plaintiff avers that on November 22, 2024, he was working as a wheelchair pusher when mail was passed out. (§ 2254 Pet., ECF No. 1, PageID.2.) Petitioner was not in his cell at the time, so the November 18, 2024, Parole Board Notice of Decision was left in the cell. (*Id.*) Petitioner contends that his cellmate read the notice, saw that Petitioner had been granted parole, and told several other inmates. (*Id.*) According to Petitioner, these inmates began threatening Petitioner after he refused to sell his personal property.

(*Id.*) Plaintiff asked to be moved to another housing unit to no avail. (*Id.*) On December 6, 2024, Petitioner got into a fight with his cellmate after Petitioner told his cellmate that he was not selling his property. (*Id.*) Petitioner contends that his cellmate assaulted him; Plaintiff tried to run but was pulled back into the cell. (*Id.*) As a result, Petitioner received a misconduct ticket charging him with fighting, a class I misconduct. (*Id.*, PageID.10.)

Petitioner contends that after he received the misconduct, the Warden of his facility notified the MPB that Petitioner's conditional grant of parole should be suspended or reconsidered. (*Id.*, PageID.5.) Petitioner contends that his parole was suspended as a result of staff failing to protect him from the threat of assault and from the ultimate assault by his cellmate. Petitioner suggests that the suspension of his parole date violated his due process rights. (*Id.*, PageID.3) As relief, Petitioner seeks immediate release. (*Id.*, PageID.4.)

## II.    Discussion

Section 2254, of Title 28, United States Code, authorizes "an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown,* 27 F.3d 1162, 1164–165 (6th Cir.1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan

system does not create a liberty interest in parole. In 2011, the Sixth Circuit reiterated the continuing validity of *Sweeton. See Crump v. Lafler,* 657 F.3d 393, 404 (6th Cir. 2011). In *Crump,* the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker,* 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.,* 460 Mich. 511, 596 N.W.2d 598, 603–04 (1999). As a consequence, Petitioner has no liberty interest in the Michigan parole procedures.

Petitioner appears to suggest that the MPB relied upon false information to suspend his parole—i.e., the misconduct ticket that Petitioner received for fighting, as Petitioner suggests that he was not fighting, but was assaulted by his cellmate. However, because Petitioner has no liberty interest in being paroled, he cannot show that the false information was relied upon to a constitutionally significant degree. The Sixth Circuit Court of Appeals considered the same claim in *Bailey v. Wainwright*, 951 F.3d 343 (6th Cir. 2020). In that case, petitioner Michael Bailey also claimed that a parole denial violated his constitutional rights because it was based on false information. The Sixth Circuit concluded that the claim was not cognizable on habeas review under § 2254:

> Section 2254(a) permits courts to "entertain an application for a writ of habeas corpus . . . only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Most habeas cases implicate the "in custody" or "in violation of" federal law requirement by themselves. We face a different problem—a prisoner who does not purport to be in custody in violation of federal law, but who is in custody, complains of an

unconnected violation of federal law, and claims a right to proceed all the same under § 2254(a).

The words "in custody" convey any conditions that "significantly restrain" a petitioner's "liberty," *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), such as imprisonment, parole restrictions, or consecutive sentences. *Peyton v. Rowe*, 391 U.S. 54, 64–65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (physical restraint and consecutive sentences); *Jones*, 371 U.S. at 242–43, 83 S.Ct. 373 (parole). The phrase "in violation of the Constitution or laws or treaties of the United States" has an equally straightforward meaning. A petitioner must claim that his custody violates federal law, not state law, not some other source of law. *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) (per curiam).

Bailey satisfies each of these requirements in isolation. He is "in custody" because he is serving a life sentence. And his petition rests on a violation of federal law because he claims that Ohio violated his Fourteenth Amendment due process rights. But he has not tied the two together. Bailey does not contend that he is in custody in violation of federal law—in other words, that he is in custody due to a violation of federal law. At its core, Bailey's petition alleges only that he has been deprived of an accurate parole record in violation of federal law. That kind of claim falls outside § 2254(a)'s domain.

Consider Bailey's complaints. He argues, first, that Ohio created a protected liberty interest in an accurate parole record and deprived him of that interest without due process when the Board failed to correct the alleged inaccuracies in the file. He argues, second, that due process independently prevents the Board from making arbitrary decisions, such as refusing to correct a flawed parole record. The problem with both theories is the same: Bailey does not explain how either of them would cause him to obtain parole or otherwise change his custody status.

He does not make this argument because he cannot make this argument. Ohio does not give inmates a right to parole; the Board has authority to grant or deny a candidate's application at its discretion. [*State ex rel.* ]*Keith*[ *v. Ohio Adult Parole Auth.*], 24 N.E.3d [1132,] 1135–36 [(Ohio 2014)]. As a result, Bailey cannot argue that, but for the allegedly inaccurate description, the Board would grant him parole.

*Id.* at 346. The discretion of the MPB is similarly broad. *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (en banc) (noting "the broad powers of the Michigan authorities to deny parole"); *see also Crump v. Lafler*, 657 F.3d 393, 403, 404 (6th Cir. 2011) (stating "[i]n Michigan, the discretion left to the Parole Board is markedly greater" and "[t]here is no 'legitimate claim of entitlement to parole"); *Hill v. Snyder*, 878 F.3d 193, 202 (6th Cir. 2017) (explaining that the

Michigan parole statutes "endow the Board with discretion to deny parole to those who are eligible").

Moreover, Petitioner's ability to challenge a prison misconduct conviction depends upon whether the conviction implicated any liberty interest. The Supreme Court has prescribed certain minimal procedural safeguards that officials must follow before a prisoner is deprived of good-time credits because of alleged misbehavior. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Here, however, Petitioner does not allege that any misconduct conviction he received as a result of the fighting ticket resulted in any loss of good-time credits, nor could he.

The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years, inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1, 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." Taylor, 418 F. App'x at 412; Mich. Comp. Laws § 800.34. Here, Petitioner can receive disciplinary time with regard to his indeterminate sentences. *See* Mich. Comp. Laws § 800.34. Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence. *See Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Moreover, Petitioner has not identified any significant, atypical deprivation resulting from any misconduct conviction. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Petitioner

7

presumably believes that his parole suspension is a significant deprivation. However, as discussed *supra*, Petitioner has no constitutional or inherent right to be conditionally released before the expiration of his sentence. *Greenholtz*, 442 U.S. at 7. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due process claim fails. *Ingram v. Jewell,* 94 F. App'x 271, 273 (6th Cir. 2004).

This analysis is not affected by the fact that the MPB set March 25, 2025, as a conditional date for Petitioner's release on parole. Petitioner's petition makes clear that he was never actually released from prison on that date. Indeed, the Supreme Court has considered a substantially similar scenario:

> In *Jago v. Van Curen*, 454 U.S. 14, 14–18 . . . (1981), the Ohio Adult Parole Authority ("OAPA") ordered a prisoner's release on parole on a date certain. The prisoner attended and completed required prison pre-release classes. Before the prisoner was released from prison on parole, the OAPA learned that the prisoner had not been truthful in his parole interview or in the parole plan submitted to his parole officers and, therefore, rescinded its earlier release decision. The Supreme Court recognized that the new parole decision visited a "grievous loss" on the prisoner but, nevertheless, held that because the prisoner had not been physically released from prison, and because Ohio law allowed for the suspension or rescission of a projected parole release at any time before the prisoner was actually physically released, the prisoner did not have a protected liberty interest in release sufficient to invoke the procedural protections of the Due Process Clause. *Id.* at 17.

*Corsetti v. Rapelje*, No. 13-cv-14138, 2013 WL 6546011, at *3 (E.D. Mich. Dec. 13, 2013) (relying upon *Jago* to dismiss a petitioner's § 2254 petition challenging the MPB's decision to suspend its decision to release petitioner on parole). Michigan law provides that "a parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole." *See* Mich. Comp. Laws § 791.236(2). Moreover, "nothing in Michigan's statutes or regulations limits the Board's discretion during the period between selection or announcement of a parole date and an inmate's actual release on parole." *Hughes v. White*, No. 02-CV-73957-DT, 2003 WL 21911216, at *3 (E.D. Mich. July 30, 2003).

Thus, until Petitioner has served his maximum sentence of 25 years, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz,* 442 U.S. at 11. "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely expected the liberty of actual release on parole from physical custody." *Hughes*, 2003 WL 21911216, at *4. Petitioner simply did not have "a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard*, 611 F.2d 136, 137 (6th Cir. 1979).

In sum, although Petitioner had been informed that he would be paroled as of March 25, 2025, his expectation that he would be paroled did not create a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *See Jago*, 454 U.S. at 17. Petitioner, therefore, is not entitled to federal habeas corpus relief.

## III.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

9

or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court finds that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter an order granting Petitioner's motion for immediate consideration (ECF No. 3) and denying a certificate of appealability, as well as a judgment dismissing the § 2254 petition.

Dated:  June 26, 2025                     /s/ HALA Y. JARBOU
                                          Hala Y. Jarbou
                                          Chief United States District Judge